Baldwin, J.
delivered the opinion of the Court.
It appears to the Court, from the record of the suit of John Christian's devisee v. Christian, decided by this *544 Court in the year 1820, an'd reported in 6 Munf. p. 534, that George Christian, at the time of his death, by force of certain entries and surveys made for his father jmnes Christian, 1st, the last will and testament of the said James, 1st, the division line agreed on between the said George and his brother John Christian, the death of his brother Charles Christian, and the last w|p anq testament of his brother James Christian, 2d, had acquired the equitable title to the tract of 1036 acres of land, afterwards entered, surveyed and patente<^ *n the names of James Christian, 3d, Charles Christian, 2d, Elizabeth, afterwards the wife of James Murphy, and Sally, afterwards the wife of William Horsley; with the exception of so much of said tract of 1036 acres, (being part of a survey for 390 acres, and of another for 123 acres,) as was allotted by the said division between George and John Christian to the latter: and that the said George Christian, at the time of his death, by virtue of the last will and testament of the said James Christian, 2d, had also acquired the title, both legal and equitable, to the tracts of 253 acres, 250 acres, and 400 acres, patented to the said James, 2d, and adjoining the said tract of 1036 acres.
And the Court is further of opinion, that the said George Christian having died intestate in the year 1784, all his real estate, including his equitable interest in the said tract of 1036 acres, and his legal and equitable right to the three adjoining tracts aforesaid, descended to the said James Christian, 3d, who was his eldest son, and as such, under the law of descents then existing, his sole heir at law; that the said patent for 1036 acres, obtained after the death of the said George in the names of all his children, by the procurement of their guardian Reuben Norvell, was in derogation of the right of the said James, 3d; and that the legal title conferred by said patent, to the extent of the equitable right which so descended from said George, must be *545 regarded as held in trust for tho sole and exclusive benefit of the said James, 3d, notwithstanding any parol disclaimers on his part of his exclusive right.
And the Court is further of opinion, that the deed of the 17th of June 1805, executed by the said James Christian, 3d, to Stephen Watts and James Murphy, conveying to them as trustees, for the purposes therein mentioned, “all the estate, both real and personal, to which the said James was in any manner entitled at law or in equity,” notwithstanding its want of designation and description of the lauds of said James intended to be conveyed, was good and valid between the parties, embraced the rights of said James in the said tract of 1036 acres, and to the three adjoining tracts aforesaid acquired by descent from the said George Christian his father; and, if the operation of such a deed could have been affected in regard to those lands by an adversary possession thereof, or any part thereof, at the time of its execution, there was in point of fact no such adversary possession.
But the Court is further of opinion, that the registry of the deed just mentioned was not, because of the want of designation and description of the lands intended to be conveyed, notice in point of law to a subsequent purchaser from the grantor of the existence of said deed; nor would notice in point of fact of such existence and contents affect such purchaser, unless he had further notice that the land purchased by him was embraced by the provisions of said deed ; and the proof of such notice, whether direct and positive, or circumstantial and presumptive, must be such as to affect the conscience of the purchaser; and is not sufficient if it merely puts him upon enquiry, but must be so strong and clear as to fix upon him the imputation of mala fides.
And the Court is further of opinion, that no power whatever was conferred by the said deed of the 17th of *546 June 1805, upon the trustees therein, to make sales of the lands thereby conveyed, whether for payment of the debts of the grantor, or any other purpose, however urgent the necessity for such sales; and that in point of fact, no such necessity has ever occurred : and therefore, that purchasers from said trustees acting in that character, could acquire no title from them to any of the lands conveyed by said deed.
And it appears to the Court, that the tract of 336 acres purchased by James Dillard, was part of the aforesaid tract of 1036 acres, and of that portion thereof, the equitable title to which descended as aforesaid, from George Christian to James Christian, 3d, his heir at law; and that the said Dillard’s purchase was from the said James, 3d, Charles Christian, 2d, Horsley and wife, and Murphy and wife. And it further appears, that the said Stephen Watts and James Murphy, the trustees in said deed of the 17th of June 1805, did in that character unite with James Christian, 3d, his brother and sisters, and the husbands of the latter, in their deed of conveyance to said Dillard of the 17th of December 1807; whereby the said Dillard not only had notice of the existence of the said deed to the trustees, but that it conveyed to them, for the benefit of their cestuis que trust, the interest of James Christian, 3d, in the land he the said Dillard, was purchasing ; and he was.consequently' bound to know that said trustees were not, by the provisions of said deed, invested with the authority or power to make any sale or conveyance of the interest of their cestuis que trust, so derived from the said James, 3d.
But it does not appear that the said Dillard had notice of the extent of the interest in said land owned by the said James, 3d, and by him conveyed to said trustees by his deed aforesaid. On the contrary, the Court is well satisfied that the said Dillard had reasonable grounds for believing, and did in good faith believe, that *547 the interest of James Christian, 3d, in said land, at the date of his deed to the trustees, was not exclusive, but only to the extent of one undivided fourth part thereof. All the circumstances of the case tended to warrant that belief. The said tract of 1036 acres was entered, surveyed and patented, in the joint names of James Christian, 3d, his brother and sisters, through the agency of their guardian. That joint title was asserted for them jointly, during the whole controversy with John Christian and his devisee. The latent equity of James Christian, 3d, to exclude his brother and sisters from participation had never been asserted for or by him. On the contrary, he claimed only an undivided interest with them, united with them in the joint sale and conveyance to Dillard, and suffered them to receive equal proportions of the purchase money; and this with the knowledge and assent of the trustees Watts and Murphy, who set up no exclusive interest in their cestuis que trust, but also united in the joint conveyance to Dillard.
The Court is therefore of opinion, that the said James Dillard must be treated as a purchaser with notice of the rights of the cestuis que trust in the deed of the 17th of June 1805, only to the extent of one undivided fourth part of the land purchased by him as aforesaid ; and that Vawter, the trustee substituted for said Waits and Murphy, is entitled to recover against his representatives, for the purposes of the trust, such undivided fourth part of said land, and no more, together with the rents and profits which have accrued upon such undivided fourth part only. And it is no good objection to such recovery for the purposes of the trust that James Christian, 3d, one of the cestuis que trust, united in the sale to said Dillard; his interests as a cestui que trust, being inseparably connected with those of the other cestuis que trust, and therefore indispensable to the enjoyment by them of their interests.
*548 And the Court is further of opinion, that a recovery against Dillard’s representatives, as aforesaid, entitles them to recover back one fourth of the purchase money Pa'd by him, with interest thereupon ; and though they wo'dd have a remedy at law therefor upon the joint warranty of the grantors in the deed; yet as the relief to which they are entitled arises out of the decree against Ibera, and upon the pleadings and proofs between the plaintiffs and said grantors, such relief is within the pro-7 . , 1 vmce of equitable jurisdiction; and is the more proper by a decree over in their behalf, that it can be given with a view to the equities amongst the grantors themselves. The relief to Dillard’s representatives arises out of the loss of the undivided fourth of the property which James Christian, 2d, undertook to sell, and which he was enabled to sell by the concurrence of the trustees Watts and Murphy. It is equitable, therefore, that the decree for reimbursement should be primarily against the said James, 2d, and the representatives of the said Waits and Murphy; with the reservation of decreeing thereafter amongst them according to their relative equities; and if the decree against them should prove unproductive, of enforcing the liabilities upon the warranty in the deed, of Charles Christian, 2d, and William Horsley.
And it further appears to the Court, that the tract purchased by Stephen Watts, was also part of the aforesaid tract of 1036 acres, and of that portion thereof the equitable title to which descended as aforesaid from George Christian to James Christian, 2d, his heir at law; and that the said Watts’ purchase was from the said James, 2d, Charles Christian, 2d, Horsley and wife, and Murphy and wife; who conveyed to him by their deed of the 8th of November 1809. And though it does not appear that the said Watts in making said purchase was actuated by any fraudulent intent, yet the land so purchased by him being embraced in the deed of convey *549 anee from James Christian, 3d, to the said Watts and Murphy, as trustees, it was utterly incompetent for the said Walts to acquire any title thereto to the prejudice of his cestuis que trust; and his said purchase and the deed of conveyance to him must be treated as wholly nugatory. Nor can his voluntary gift and conveyance to his son Henry H. Watts avail any thing against the rights of said cestuis que trust, and the claim, for the purposes of the trust, of the substituted trustee, who must recover the said tract of land against the representatives of said Henry H. Watts, together with the rents and profits which have accrued therefrom.
And the Court is further of opinion, that the recovery against the representatives of Henry H. Watts, as aforesaid, entitles them to the benefit of the provision for his indemnity, made in the codicil to the will of the said Stephen Watts; the proper measure of which is the value of the land lost, the costs and expenses incurred in their defence, and the amount of the rents and profits to which they are subjected.
And the Court is further of opinion, that the relief to the representatives of said Stephen Watts, in consequence of the loss of the land so purchased by him, cannot be based upon the joint warranty in the deed of his vendors; the effect of which would he to make each, including one of his cestuis que trust, liable for the consideration received by all, upon a contract utterly null and void, according to the rules of equity; and upon a warranty in a deed which ought to be wholly vacated. Whereas the principle upon which the representatives of said Watts are entitled to any relief is, that the contract between him and his vendors was founded upon a mutual mistake in the state of the title, in supposing that all the children of George Christian had an equal interest in the subject: when in truth James Christian, 3d, was, at the time of his deed to the trustees, the exclusive equitable owner. The representatives of the said *550 Stephen Watts must, therefore, recover back separately from each of his vendors, James Christian, 3d, Charles Christian, 2d, James Murphy and William Horsley, or their representatives, so much of the purchase money as was paid by him to each respectively, with interest thereupon.
And the Court is further of opinion, that in the recovery of rents and profits, as aforesaid, which have accrued since the deaths of said James Dillard and Henry H. Watts, respectively, regard must be had to the nature of the representative character in which those rents and profits were received; so as not to throw upon the personal representative such as are properly chargeable to the heirs or devisees.
And the Court is further of opinion, that by the terms, true intent and meaning of the contract of the 16th of January 1801, between Reuben Norvell of the one part, and James Christian, 3d, and Elizabeth Christian and Stephen Watts, in behalf of Charles Christian and Sally Christian, of the other, the said Norvell, for his services in conducting the controversy with John Christian, was to receive, in the event of success, a moiety of so much of the aforesaid tract of 1036 acres, as was separated for the said John Christian, from the rest of that tract, by the division line already mentioned, and no more; and the same not having been recovered from the said John Christian, or his representatives, but on the contrary their right thereto having been established by the decision of this Court above referred to, the said Norvell had no well founded claim arising out of that contract, to any part of the lands to which the title of George Christian was established, as above set forth. And those lands having descended to James Christian, 3d, his sole heir at law, passed by his deed of conveyance of the 17th of June 1805, to the trustees therein for the purposes of the trust; and the rights of the cestuis que trust therein could not be affected by the *551 subsequent deed of conveyance of 1820, from James Christian, 3d, and the other children of George Christian, to said Norvell; under which the latter claims a large portion of the lands to which the title of George Christian was established as aforesaid, embracing the aforesaid tracts of 250, 253 and 400 acres, patented to James Christian, 2cZ, adjoining the aforesaid tract of 1036 acres, and a moiety of the Stonewall tract, recovered from Boothe and Staples; in regard to which last, the rights of the parties have not yet been adjudicated by the Circuit Court. The said Norvell could have acquired no title under that deed, unless he was a purchaser, without notice of the exclusive right by descent of James Christian, 3d, and his conveyance thereof by his deed of the 17th of June 1805, to the trustees therein: And the Court is satisfied from the pleadings and proofs that he had such notice.
The Court is therefore of opinion, that the rights of the said cestuis que trust must prevail against the pretensions of said Norvell; and it would be proper that the substituted trustee should recover against him, for the purposes of the trust, the aforesaid tracts of 250, 253 and 400 acres, patented to James Christian, ‘Id, but for the intervention of the claims of others. But the claims of said cestuis que trust cannot prevail against bona fide purchasers and incumbrancers, from said Norvell, without notice. And the three tracts last mentioned appear to be embraced in a deed of trust executed by said Norvell, for the security of creditors : a part of one of them is claimed by James London's ox’or, as having been purchased by his testator from said Norvell: another of them, that of 253 acres, appears to be in the possession of the representatives of Henry H. Watts: and Charles Mundy claims a parcel of 180 acres of laud, as purchased by him from Norvell's trustees. But the deeds to .London and Mundy, and the deed to Norvell himself, are not in the record; nor does the record ascertain whe *552 ther Mundy’s purchase is part of either of the three tracts aforesaid, or whether it is part of some other, if any, of the lands embraced in the deed to Norvell; nor under what title, if any, the representatives of Henry H. Watts, hold the said tract of 253 acres. The causes, therefore, were not in a condition for a decree by the Circuit Court in regard to Norvell, nor for a decision upon the rights of those claiming under him; all of whom ought to have been made parties; and proceedings ought to have been had by a reference to a commissioner, a survey, and other appropriate means, if requisite, to ascertain the state of the title claimed, and possession held under said Norvell. If it should be ascertained by proper proceedings, that the purchasers and incumbrancers from Norvell are entitled to protection against the cestuis que trust in the deed of the 17th of June 1805, then the relief of the substituted trustee, for the purposes of the trust, against Norvell, must be for the value of such of the lands embraced therein, and conveyed to him as aforesaid, as cannot be recovered for said cestuis que trust.
And the Court is further of opinion, that the causes were not in a condition for a decree over by the Circuit Court in favour of Norvell against his vendors, if to any he be entitled; inasmuch as his right to relief against them is dependent, in one aspect, upon the recovery against him for the cestuis que trust of the lands conveyed to him as aforesaid; and, in another, upon the recovery for them and the actual payment by him of the value of said lands: and of the terms of the contract between him and his vendors, assumed by the commissioners, the evidence is not in the record.
And the Court is further of opinion, that so far as the estimated price between Norvell and his vendors of the lands conveyed to him by them as aforesaid, consisted of his claim to a moiety of said lands for his services in conducting the controversy in relation thereto, he is en *553 titled to no relief in any event; his claim thereto under his agreement of the 16th of June 1801, being without foundation; and the allowance thereof, in the said conveyance to him of 1820, if not fraudulently procured, which the Court deems it unnecessary to decide, being merely gratuitous.
And the Court is further of opinion, upon the authority of the case of Claiborne v. Henderson, 3 Hen. & Munf. 322, that as the law stood at the death of George Christian, in the year 1784, a widow was not dowable of an equitable estate; and consequently that Mrs. Watts, the widow of said George Christian, had no right to dower in the land sold to Dillard, nor in the land purchased by her second husband Stephen Watts as aforesaid; and therefore that the said Stephen Watts ought not, in the settlement of his trust accounts, or in any other mode, to be allowed in right of his said wife, a third of the rents and profits of those lands.
Bat in regard to the lands to which George Christian was entitled by devise from his grandmother Mrs. Whitney, he having died seized of the legal estate thereof, his said widow was entitled to dower in the same; and though there was no formal assignment thereof, yet the said Watts having received the rents and profits of those lands while unsold, and the purchase moneys thereof when sold, and being now held by the assignee of the heir at law to a strict accountability therefor, he ought to be allowed, in the settlement of his trust accounts, one third of said rents, and one third of said purchase moneys, during the life of his wife, on account of her said dower; though they may not have intended, but on the contrary disclaimed the intention of asserting said right to dower, while his management of the trust subject was unimpeached.
And the Court is further of opinion, that the said Stephen Watts ought not to be allowed, in the settlement of his trust accounts, the price of the tract of *554 land purchased by him from John Loving, and by said Watts conveyed to said James Christian, 3d, by his deed of the 24th of June 1816, unless it shall appear that said purchase was with or for the trust fund, and can be made available for the purposes of the trust. If the said land was improperly conveyed to the said James, 3d, individually, and he still holds the same, so that by the proper decree, it can be secured as a part of the trust subject for the purposes of the trust, in that event, and in that only, ought the said Watts to receive a credit with the trust fund for the price aforesaid.
And the Court is further of ■ opinion, that the said Stephen Watts is properly chargeable with the price of the land sold to Hardwick, and the price of the land sold to North, but not with the supposed sacrifices at those sales; no such case having been made by the pleadings, whatever may be the sufficiency of the evidence ; which the Court deems it unnecessary to consider.
And the Court is further of opinion, that a trustee accountable for rents received by him, is properly chargeable with interest thereupon ; and therefore, in the settlement of the trust accounts of the said Stephen Watts, it is not error to his prejudice to apply his disbursements to the discharge of such rents, and so leave other debts against him to carry interest.
It is therefore adjudged, ordered and decreed that the decrees of the Circuit Court, so far as they conflict with the foregoing opinion, whether to the prejudice of the appellants or the appellees, be reversed and annulled, and the residue thereof affirmed: with separate costs to the appellant or appellants on each separate appeal. And the causes are remanded to the Circuit Court, to be further proceeded in, according to the principles of the foregoing opinion and decree: with a direction that the plaintiffs in the suit brought by Vawter, trustee, and others, be required to amend their bill, by making the said James Christian, 3d, a defendant thereto.